M.V. v Bravo Media LLC (2026 NY Slip Op 50307(U))

[*1]

M.V. v Bravo Media LLC

2026 NY Slip Op 50307(U)

Decided on February 27, 2026

Supreme Court, New York County

Ramseur, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 27, 2026
Supreme Court, New York County

M.V., Plaintiff,

againstBravo Media LLC, Forest Productions Inc., Warner Bros. Entertainment Inc., NBC Universal Media, LLC, 
 Shed Media US Inc., Peacock TV LLC, Defendant.

Index No. 157030/2023

M.V.: Derek T. Smith, Esq. of Derek Smith Law Group, PLLCBravo Media, et al.: Christine Lepera, Esq. of Mitchell Silberg & Knupp LLP

Dakota D. Ramseur, J.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 88, 89, 90, 92, 94 were read on this motion to/for DISMISSAL.
In July of 2023, plaintiff M.V. commenced this action against defendants Bravo Media, LLC, (hereinafter "Bravo"), Forest Productions, Inc. ("Forest"), Warner Bros. Entertainment Inc. ("Warner Bros."), NBC Universal Media, LLC. ("NBC"), Shed Media US Inc. ("Shed Media"), and Peacock TV, LLC ("Peacock") (collectively, the "defendants"). Whether brought under California, New York, Massachusetts, or Federal law, plaintiff asserts thirteen separate causes of action. In Motion Sequence 004, defendants move to dismiss the amended complaint in its entirety pursuant to CPLR 3211 (a)(2), (a)(5), (a)(7), and CPLR 3211 (g). In their motion, defendants also seek an award of attorneys' fees pursuant to Civil Rights Law § 70-a (1)(a). Plaintiff opposes the motion.[FN1]
For the following reasons, defendants' motion is granted in its [*2]entirety.BACKGROUNDIn September 2021, plaintiff, a Utah resident, entered into an employment contract (the" Deal Memo") and arbitration agreement ("Agreement") with Shed Media to play a supporting role as a "butler" in The Real Housewives Ultimate Girls' Trip, an unscripted reality television series, produced by defendants and filmed in The Berkshires in Massachusetts.[FN2]
 (NYSCEF doc. no. 46 at ¶¶ 24-41, 52, 56, amended complaint.) According to his amended complaint, defendants did not give plaintiff any lines to read, provide him with a script, or "control the results produced by plaintiff's appearance." (Id. at ¶P53, 58.) Rather, cast members like himself conducted themselves on their own accord. (Id. at ¶54.) The amended complaint describes two occasions in which Brandi Glanville and Phaedra Parks,[FN3]
two main cast members, sexually assaulted and harassed plaintiff. (Id. at ¶¶65-79.) The first incident occurred during the "Lasagna Making" scene, when Glanville allegedly groped plaintiff after becoming intoxicated. (Id. at ¶65.) The second incident occurred during the "Burbon Tasting" episode, after a burlesque dancer finished performing. At this point, a producer directed plaintiff to "Go over and get the women dancing!" (Id. at ¶¶69-72.) Plaintiff, in his words, "complied as directed and made his own decision to start dancing with them," whereupon Parks "groped and/or slapped plaintiff on his buttock." (Id. at ¶¶73-74.) Glanville then approached him from behind, stated "Earn your money, [M.V.]. Take your shirt off. Do Something!," and proceeded to tear plaintiff's shirt off, exposing him to the filming cameras. (Id. at ¶¶74-76, 82.) Plaintiff's amended complaint also relates alleged sexual assaults and/or harassing behavior by Glanville and Parks on previous seasons of the show. (See id. at ¶¶89-118.)
Plaintiff's amended complaint asserts thirteen causes of action. Counts (1) through (4)—for sexual harassment, discrimination based on plaintiff's sex and gender, and aiding and abetting—are brought under §12940 of California's Fair Employment and Housing Act ("CFEHA"). Counts (5) through (7) are for intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress under California common law (or alternatively, New York or Massachusetts common law). Count (8) asserts a reckless infliction of emotional distress claim under California and Massachusetts law. Count (9) is brought for a violation of §§51 and 52 of California's Unruh Civil Rights Act. Count (10) is brought under the federal Trafficking Victims Protection Act ("TVPA," 18 USC §1591, et. seq). Counts (11) through (13) are for, respectively, sexual battery under California Civil Code §1708.5, assault and battery under New York law, and indecent assault and battery under Massachusetts law.
As will be discussed below, the parties dispute how plaintiff's employment agreement (referred to as "The Deal Memo") and arbitration agreement should be construed and what effect they have on each of his causes of action. In relevant part, the Deal Memo's "Work-Related Injuries" section provides, "Employee acknowledges and agrees that Employee's . . . sole remedy against the Company and any affiliated companies for any work-related injury, illness, disability, [*3]or death will be limited to the benefits provided by workers' compensation." (NYSCEF doc. no. 77 at §5, Deal Memo.) It further states that it "shall be governed and construed in accordance with the laws of the State of California applicable to contracts entered into and fully performed in California, without regard to principles of conflict of laws." (Id. at §22.2) Moreover, the parties agreed that:
"any and all controversies, claims or disputes arising out of or relating to this Agreement, its enforcement, interpretation, performance, expiration, or because of an alleged breach, default, or misrepresentation in connection with any of its provisions, or arising out of or relating in any way to your employment with Company (pursuant to this Agreement or otherwise), or termination thereof, shall be submitted to final and binding arbitration" (Id.)Under the arbitration agreement (which mirrors the Deal Memo's §22.2), the parties agreed to "the resolution by arbitration . . . of all claims (common law or statutory) that the Company might have against me, or that I may have against the Company." (NYSCEF doc. no. 78, arbitration agreement.) It further provides,
"The Federal Arbitration Act shall govern this agreement, or if for any reason the FAA does not apply, the arbitration law of the State of California . . . The arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the State of California, or federal law, or both, as applicable to the claim(s) asserted." (Id.)
Lastly, the arbitration agreement contains a severability clause, under which, "If any provision of this Agreement to arbitrate is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of this arbitration agreement. All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes." (Id.)

Defendants' CPLR 3211 Motion
As to plaintiff's claims under California's FEHA and Civil Rights Act in Counts (1) through (4), (8) and (9), defendants contend that, first, the Deal Memo's choice of law provision applies to contractual claims plaintiff might have but not statutory ones, and, second, in the absence of an applicable choice of law provision, he does not plead the requisite nexus to California to assert these causes of action in this proceeding. Instead, because plaintiff is not a New York resident and the tortious conduct on the set of Real Housewives took place in Massachusetts, Massachusetts substantive law applies. Defendants further maintain that the Court must apply New York procedural law, including its statute of limitations, for each tort. If true, plaintiff's claims for sexual assault, battery, intentional infliction of emotional distress, and reckless infliction of emotional distress are all time-barred as they were brought outside New York's one-year limitation period. Alternatively, or in addition, defendants argue that Counts (5) through (9) and (11) through (13) must be dismissed because plaintiff workers' compensation provides the exclusive remedy for these torts. Lastly, to the extent dismissal is not granted on these grounds, defendants argue that each cause of action is subject to dismissal under CPLR 3211 (a)(7) for failure to state a cause of action. The Court will address these particularized arguments as needed below.
Under CPLR 3211 (g), defendants contend that the gravamen of plaintiff's causes of action is conduct and speech that occurred in furtherance of the creation, development, casting, and production of Real Housewives and, thus, falls within the scope of New York Civil Rights Law § 76-a definition of "public participation." Given this, they argue that, under the burden-[*4]shifting approach of CPLR 3211 (g), plaintiff must, but cannot, demonstrate a substantial basis in law for his claims.

Plaintiff's Opposition

Where defendants argue that California law is inapplicable, plaintiff argues that the two agreements require the Court to apply California substantive law. He points to the language in the Deal Memo, which states, "[t]his Agreement shall be governed and construed in accordance with the laws of the State of California" as well as the fact that, under the arbitration agreement, the arbitrator must apply "the substantive law (and the law of remedies, if applicable) of the State of California." In his view, even though he commenced this action instead of an arbitration proceeding and defendants waived their right to one, the arbitration agreement's severability clause saves the section that purportedly establishes California as their choice of law. Given this, plaintiff maintains that he has properly asserted causes of action under California's Fair Employment and Housing Act and its Civil Rights Act. That the parties chose California as its choice for substantive law and "the law of remedies" implicates the defendants' statute of limitations arguments as well. Causes of action that are otherwise time-barred under New York's one-year statute of limitations are, according to plaintiff's theory, subject to California's two-year limitations period, thus saving those causes of action for sexual assault, battery, and infliction of emotional distress. With respect to workers' compensation being his exclusive remedy, plaintiff asserts that he was an independent contractor and not an employee, as demonstrated by, among other things, the fact that defendants did not give him lines to say in the show or a script to follow. Lastly, under CPLR 3211 (g), plaintiff maintains that the gravamen of his complaint does not concern, as defendants suggest, the choices in casting and production of the Real Housewives but rather the sexual assaults that took place on set. Thus, he argues, Civil Rights Law § 76-a has no bearing on this matter.

 DISCUSSION

Dismissal Under CPLR 3211 (a)(2)—Jurisdictional Defects

The Parties' Choice of Law
At the outset, plaintiff does not dispute that Counts (1) through (4), (8), and (9) assert non-contractual claims, given that they each are premised on rights created by California statute and not from an alleged breach of the terms contained in the parties' employment contract. Accordingly, since (1) the Deal Memo establishes California as the choice of law "applicable to contracts entered into and fully performed in California," and (2) plaintiff does not appear to argue that Deal Memo creates a choice of law for non-contractual, statutory claims (see NYSCEF doc. no. 89 at ¶¶7,8, 13, plaintiff's aff. in opp.),[FN4]
 the only point in dispute is whether the parties' arbitration agreement establishes California as their choice of law for these counts. The Court finds that it does not.
To reiterate plaintiff's position, the severability clause provides that "if any provision of this agreement to arbitrate is adjudged to be void or otherwise unenforceable . . . such adjudication shall not affect the validity of the remainder of the agreement." In his view, the provision "shall apply the substantive law (and the law of remedies, if applicable) of the State of California" remains an agreed upon term that should be effectuated by the Court. Yet plaintiff's argument is premised on an atextual interpretation of the agreement's terms. At no point was any part of it "adjudged to be void or otherwise unenforceable;" and the supposed choice of law provision is, and always has been, binding only in an arbitration forum on whomever is appointed arbitrator. Absent from the agreement is any language suggesting that the parties agreed to a choice of law provision should claims be brought in a plenary action. To interpret the arbitration agreement differently, then, would be to give effect to contractual terms the parties did not contract for. (See Rubenstein v C&A Mktg., Inc., 205 AF3d 832, 834 [2d Dept 2022] ["Arbitration is a matter of contract, and arbitration clauses, which are subject to ordinary principles of contract interpretation, must be enforced according to their own terms"].) In addition, his position ignores the fact that, despite "waiv[ing his] right to have a court or jury trial on any arbitrable claim" (NYSCEF doc. no. 78 ), plaintiff commenced this action instead of an arbitration proceeding. In so doing, he repudiated the very agreement whose severability clause he now seeks to enforce. In essence, plaintiff chose a forum different from the one for which the agreement established California as the parties' choice of law. As such, adopting plaintiff's theory would have the paradoxical effect of enforcing one provision (his preference for the choice of law) of a broader arbitration agreement that plaintiff himself renounced.
Zynex v Med., Inc. v Frabotta (2022 US Dist. LEXIS 76975 [D. Colorado 2022]) is plaintiff's only supporting citation. A review of this decision from the federal District Court of Colorado, however, reveals that the portion that advances plaintiff's argument—to the extent that it draws a conclusion at all—is clearly dicta. There, the parties entered into an arbitration agreement that called for an arbitrator to apply Colorado, as opposed to Pennsylvania, law. In addressing the defendant's argument that the choice of law only applies in arbitration as "strained," the court wrote, "The Restatement [(Second) of Conflict of Laws] provides that the law of the state chosen by the parties 'to govern their contractual rights and duties' will be applied unless certain exceptions apply. The parties here agreed that their contractual rights and duties would be governed by Colorado law. That the Agreement references only arbitration does not render this provision meaningless." (Id. at *7 [emphasis added].) Without further explaining what "meaning" might be retained or, for that matter, a supporting citation, the court nonetheless found that the parties' arguments on this issue were a "red herring" as the defendant also signed a separate release that explicitly stated the contract shall be enforced in accordance with Colorado law, regardless of whether the claims were before an arbitrator or the court. (Id. at *8.) Zynex's procedural posture also distinguishes it from this matter. In Zynex, the plaintiff commenced the action seeking an order to compel the defendant to arbitrate their respective claims for breach of contract. Thus, unlike M.V.—who chose to forgo arbitration— and Bravo Media et. al.—all of whom waived their right to enforce the arbitration agreement—in Zynex, the parties' respective positions concerned different interpretation of a clearly enforceable agreement. Put differently, the District Court was not asked to enforce a single provision of a non-operative arbitration agreement that both parties otherwise repudiated.
Even if the Court were to find that the parties chose California as their governing law, plaintiff still would not be able to assert causes of action under California's Fair Employment [*5]and Housing Act and Unruh Civil Rights Act. As explained in O'Connor v Uber Technologies, Inc. (58 F.Supp.3d 989, 1004 [N.D. Cal. 2014], citing Sullivan v Oracle Corp., 51 Cal.4th 1191, 127 [2011]), under California law, a presumption exists against the extraterritorial application of its statutes, a presumption predicated on the notion that the California Legislature would not "intend a statute to be operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably inferred." (Id. [internal citations omitted].) Furthermore, where the legislature has affirmatively imposed geographical limitations on a statute's application, "courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." (Id., quoting Gravquick A/S v Trimble Nav. Int'l Ltd., 323 F.3d 1219, 1223 [9th Cir. 2003].) This is because a contractual choice of law provision incorporates all of California law, including this presumption against extraterritorial application and any affirmative limitation. (O'Connor, at 1004 [emphasis original].) Accordingly, where an agreement's choice of law conflicts with the territorial geographical limitations of a statute, California law "recognized that the parties' agreement . . . must yield.'" (Id., citing Gravequick, at 1123.)
California's FEHA and Unruh Civil Rights Act are two of those statutes where the legislature has imposed a geographic limit. (Campbell v Arco Marine, Inc., 42 Cal.App.4th 1850, 1860 [1996] ["Our reading of the Legislature's statement of purpose leads us to agree that FEHA should not be construed to apply to non-residents employed outside the state when the tortious conduct did not occur in California"]; Loza v Intel Americas, Inc., 2020 US Dist. LEXIS 241031 at *11 [N.D. Cal 2020] [recognizing that FEHA does not apply extraterritorially]; Warner v Tinder Inc., 105 F. Supp.3d 1083, 1009 [ C.D. Cal. 2015] ["By its own terms, the Unruh Act is expressly limited to discrimination that takes place within California's borders . . . Plaintiff has not presented any case law, nor is the court aware of any, applying section 51 to alleged discrimination suffered by parties outside California"]; Loving v Princess Cruise Lines, Ltd., 2009 WL 7236419 at *8 [C.D. Cal. 2009] ["Plaintiff's state law claims also do not have extraterritorial reach. It is well-settled that the Unruh Act applies only within California"].) For purposes of FEHA and the Civil Rights Act, then, the relevant inquiry is not the location of employment or where the contract was formed, but rather whether the conduct that gives rise to liability occurs in California. (Loza, at *4.) Here, the specific conduct giving rise to plaintiff's sexual harassment (whether as an employee or independent contractor) and discrimination claims under these two acts indisputably occurred on the set of the Real Housewives in Massachusetts. The same analysis must apply to plaintiff's Count (11) for sexual battery under California Civil Code §1708.5, as plaintiff was not a resident of California and the conduct which he alleges constitutes battery did not occur in California. Accordingly, plaintiff cannot assert these claims in this forum.
Dismissal Under CPLR 3211 (a)(5)—Statute of Limitations
Plaintiff's threshold argument that the parties' arbitration agreement requires the Court to use California's statute of limitations is based on the same provision identified above, specifically the part requiring the arbitrator to apply California "substantive law (and the law of remedies)." (NYSCEF doc. no. 89 at ¶32 [emphasis original].) For the same reasons identified above, this contention has no merit. Accordingly, because the parties did not agree to California to be their choice of law and New York is the forum state for his action, the Court must apply New York's procedural rules. (See Tanges v Heidelberg N. Am., 93 NY2d 48, 54-55 [1999] [recognizing that under common-law rules, matters of procedure—like statutes of [*6]limitation—are governed by the law of the forum].)
Here, plaintiff commenced this action on July 13, 2023—or more than one year after Glanville and Parks allegedly sexually assaulted him. Thus, even without recourse to CPLR 202, plaintiff's common-law causes of action for intentional infliction of emotional distress (Count 5), reckless inflectional of emotional distress (Count 8), and sexual assault and battery (Counts 11-13) are all time-barred by New York's statute of limitations. (See CPLR 215[3] [one-year limitations period for actions to recover damages for assault and battery]; Jarusauskaite v Almod Diamonds, Ltd., 198 AD3d 458, 459 [1st Dept 2021] [one-year limitations period for intentional or reckless infliction of emotional distress].)[FN5]
However, New York's statute of limitations is not grounds for dismissal of plaintiff's general negligence claim and claim for negligent infliction of emotional distress as each has a three-year limitation period.[FN6]

Dismissal Under CPLR 3211 (a)(7)
On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (Leon v Martinez, 84 NY2d 83, 87-88 [1994].) "[B]are legal conclusions as well as factual claims which are either inherently incredible or flatly contradicted by documentary evidence" cannot survive a motion to dismiss. (Summit Solomon & Feldesman v Lacher, 212 AD2d 487 [1st Dept 1995] [citation omitted].) A court's inquiry is limited to assessing the legal sufficiency of the plaintiff's pleadings—that is, whether or not the facts set forth by the plaintiff sufficiently apprise the court and the defendants of the transactions and/or occurrences that make up the material elements of a cause of action. (See CPLR 3013.) Accordingly, the Court's only function is to determine whether the facts as alleged fit within a cognizable legal theory. (JF Capital Advisors, 25 NY3d at 764.)
Plaintiff's Federal Sex Trafficking Cause of Action Under 18 U.S.C. § 1591
18 U.S.C. § 1591, otherwise known as the Trafficking Victims Protection Act (TVPA), imposes criminal sanctions on "whoever knowingly recruits, entices, harbors, transports, provides, obtains . . . or solicits by any means a person [with knowledge] that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act" (18 USC § 1591[a]; Noble v Weinstein, 335 F. Supp [*7]3d 504, 514-515 [SDNY 2018].) § 1595 of the same chapter gives victims of sex trafficking, as is defined above, a private cause of action against the perpetrator and "whoever knowingly benefits, attempts or conspires to benefit, financially, or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." (18 U.S.C. § 1595 [a].) While most TVPA claims present archetypal sex trafficking—i.e., forced prostitution or sexual slavery—courts have also applied the act to cases where victims claim to have been forced into sexual activity with the promise of career advancement. (Eckhart v Fox News Network, 2021 US Dist. LEXIS 171219 at *8 [SDNY 2021].) In analyzing atypical claims such as the one presented by plaintiff, federal courts require a showing that the defendant(s) (1) recruited, enticed, transported, etc., a person; (2) knowing that means of force or threats of force; (3) would be used to cause the person to engage in a commercial sex act. (Id.)
On the instant motion, defendants argue that plaintiff was not forced to "engage in a commercial sex act" within the meaning of the statute during the filming of Real Housewives; but even if the alleged sexual assaults can be considered such a sex act, they did not have the requisite knowledge that a threat or use of force would be used. The Court agrees.
Commercial Sex Act
§ 1591 (e)(3) defines the term "commercial sex act" as "any sex act, on account of which anything of value is given to or received by another person." (18 USC §1591 [e] [3].) In surveying precedent from the Southern District of New York, it is clear that plaintiff was not forced to engage in a commercial sex act as defined by the statute. While plaintiff's claim is certainly atypical in that he is not alleging the type or degree of conduct that would amount to "forced prostitution or sexual slavery," it is even more atypical in that he does not suggest that he was forced into sexual activity with the promise of career advancement—which, as far as the Court is aware, is the only other line of cases in which the archetypal sex trafficking definition has been expanded to include. (See Eckhart, at 2-3 [allegations that individual defendant Henry used empty promises of career advancement to defraud her into engaging in sexual intercourse]; Ardolf v Weber, 2019 US Dist. LEXIS 127893 at * 3-4 [SDNY 2019] [defendant, a power and influential photographer, alleged to have sexually molested models while insinuating that he would help advance their careers in the industry]; Geiss v Weinstein Company Holdings LLC, 383 F Supp 3d 156, 168 [SDNY 2019] [the TVPA extends to "enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in . . . non-consensual sexual activity"]; Noble v Weinstein, 353 F Supp 3d 504, 521 [SDNY 2018] [Weinstein arranged meeting with actress for a particular role, whereupon, after promising he would "take care of everything," he grabbed and fondled her and forced her to engage in a sex act]; Martinez v 189 Chrystie Street Partners, LP, 2023 US Dist. LEXIS 149510 at *2-3, 11-12 [SDNY 2023] [finding plaintiff adequately pled a commercial sex act where the individual defendant made nonconsensual sexual contact with his penis while making future job opportunities contingent upon satisfying his sexual demands].)
These cases are also instructive to the extent they demonstrate the qualitative difference between the conduct that has been held to be a "commercial sex act" in the Southern District's interpretation of the statute and the two instances of Glanville and Parks groping and/or slapping plaintiff's buttock. Eckhart is especially illuminating as it demarcates the boundary between conduct that comes within the statute ambit and conduct that, while serious and troubling, is nonetheless non-actionable. As described above, in Eckhart, the Southern District found that the [*8]plaintiff had adequately alleged that the individual defendant had engaged in a commercial sex act when, having offered her career advancement, he had used fraud and coercion to lure her back to his hotel room to engage in sexual intercourse. In contrast, against his employer, Fox News, the Southern District found that she failed to plead that it knew or should have known that he had engaged in an act in violation of the sex-trafficking statute. That Fox News might have been aware that he was a serial harasser and had engaged in sexually inappropriate conduct towards women, as Eckhart had alleged, did not amount to knowing that he would coerce her into engaging in a sex act. The same principle holds here: plaintiff's complaint lists numerous other instances from 2011 to 2015 where Glanville and Parks engaged in alleged misconduct. (See NYSCEF doc. no. 46 at ¶ 90 [Glanville say, "I tried to make out with your wife, but I don't think she wanted"]; at ¶ 91 [alleged instance of sexual harassment of husband of another housewife]; at ¶¶ 92-93 [instances of racial discrimination]; at ¶¶ 94-103 [further instances of purported sexual harassment involving Glanville using sexually explicit language towards other housewives].)[FN7]
Yet none of these instances suggest that they knew Glanville or Parks were acting in ways that could be construed as a violation of this federal sex-trafficking act. Plaintiff's opposition does not identify an instance where a court has held that sexual assault, without allegations of non-consensual sexual activity, constitutes a "commercial sex act" for purposes of this statute. Accordingly, the Court grants dismissal of Count (10) as well.
Dismissal under CPLR 3211 (g)(1)
Under CPLR 3211 (g)(1), dismissal is appropriate when the moving party has demonstrated that the subject of the motion involves "public petition and participation" as defined by § 76-a of New York's Civil Rights Law, also known as New York's anti-SLAPP statute, unless the responding party "demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification, or reversal of existing law." (CPLR 3211 [g] [1].) § 76-a (a)(2) defines an "action involving public participation" as a claim based upon "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." (Civil Rights Law § 76-a [a] [2].) That same section requires "public interest" to be construed broadly and shall mean any subject other than a purely private matter. (Id.)
Reading these two provisions together, once the defendant has established that the subject of the action is both (1) based on lawful conduct in furtherance of the exercise of the right to free speech and (2) concerns the public interest, then the Court must switch the burden to the plaintiff to demonstrate that the claim has a substantial basis in the law. (Karl Reeves, C.E.I.NY Corp v Associated Newspapers, Ltd., 228 AD3d 75, 72 [1st Dept 2024].) In reviewing the sufficiency of a claim under CPLR 3211 (g)(1), courts may consider exhibits and other documents submitted in evidentiary form that would not typically be allowed under a conventional CPLR 3211 (a)(7) motion. Both parties concede that New York's anti-SLAPP statute is similar to that of California's, and in certain instances, New York courts look to [*9]California courts applying the California anti-SLAPP statute for guidance. (Aristocrat Plastic Surgery, P.C. v Silva, 206 AD3d 26, 31 [1st Dept 2022].) 
Civil Rights Law § 76-a (a)(2)
Defendants' argument for dismissal under CPLR 3211 (g) is that (1) the creation of Real Housewives is an exercise of free speech, (2) decisions in the creative process such as writing, casting, and broadcasting are "in furtherance" of their free speech rights, and (3) plaintiff's causes of action "take issue with alleged acts in furtherance of [the] creation of Real Housewives." More specifically, they contend that the allegation that defendants "wrongfully continued to hire Glanville" and that producers sent plaintiff to "get the women dancing!" both relate to acts in furtherance of the production of the show. In assessing whether defendant's conduct is "in furtherance" of a protected free speech activity, both parties acknowledge that the Court must look to the "principal thrust" or gravamen of plaintiff's causes of action to identify the alleged wrongful and injury-producing conduct "that provides the foundation for the claims." (See Hunter v CBS Broad Inc., 221 Cal. App. 4th 1510, 1520 [2013].)[FN8]

Here, defendants persuasively argue that the gravamen of plaintiff's claims against them is based on the decision to cast these two women as Real Housewives and with decisions producers made in how plaintiff appeared on set. In other words, since the alleged sexual assaults were perpetrated by nonparties, defendants have established that the principal thrust of the allegations against them consists of decisions made as part of the creative process and in furtherance of producing the show. (See id. at 1521 [CBS's decision to employ weather anchors held to be protected activity on grounds that it "helped or assisted" forms of First Amendment expression, even as the plaintiff challenged the employment decisions on grounds of gender discrimination]; Taylor v Viacom, 2018 WL 4959821 at * 3 [C.D. Cal. 2018] [rejecting the plaintiff's argument that his negligence, negligent misrepresentation, and negligent infliction of emotional distress claims arise separately from the defendant's protected casting decisions].) In sum, plaintiff's argument—that defendants' tortious conduct cannot be considered as "protected activity in furtherance of their free speech"—is insufficient to avoid the burden shifting approach of New York's anti-SLAPP statutes.[FN9]
 (See Doe v Gangland Productions, 730 F3d 946, 954 [9th Cir. 2013] [holding that, in determining whether a defendant has met its initial anti-SLAPP burden, "a court does not evaluate whether defendant's conduct was lawful or unlawful," but rather "any claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the second step of the analysis"]; Taylor v Viacom Inc., 2018 US Dist. LEXIS [*10]95391 at * 9 ["Courts have held that the 'creation of a television show,' including the 'writing, casting, and broadcasting' of a television show, is an exercise of free speech"].) Accordingly, since the manner in which defendants "cast," "directed," and "edited" the Real Housewives is undoubtedly the gravamen of plaintiff's causes of action against them, the burden switches to plaintiff to establish a substantial basis for his complaint.[FN10]

Substantial Basis
To demonstrate a substantial basis in law under CPLR 3211 (g) the claims must provide "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." (Smartmatic USA Corp., v Fox Corporation, 213 AD3d 512 [1st Dept 2023] quoting Golby v N&P Engrs. & Land Surveyor, PLLC, 185 AD3d 792, 793-794 [2nd Dept 2020].) Under CPLR 3211 (g) the substantial basis standard is "more exacting that the liberal pleading standard applicable to ordinary CPLR 3211 (a) (7) motions" and requires that a complaint contain detailed allegations or be accompanied by supporting affidavits. (CPLR 3211 [g] [2]; Reeves v Associated Newspapers, Ltd., 232 AD3d 10, 24 [1st Dept 2024].) Here, the Court finds that plaintiff has failed to demonstrate a substantial basis in law for both his general negligence and negligent infliction of emotional distress claims.
Count (6) asserts a general negligence cause of action against defendants as an "innkeeper" based on a duty of care it owed to him as their employee or independent contractor. (NYSCEF doc. no. 46 at ¶¶ 157-162.)[FN11]
In moving to dismiss, defendants contend that, as a matter of law, plaintiff alleges an employee relationship and that Massachusetts' workers' compensation law provides his exclusive remedy for his tort claims, as agreed to in employment contract. By contrast, plaintiff maintains that defendants controlled neither the results produced by his appearance on their show nor the means to reach those results; thus, he argues, the question of whether he is an employee or an independent contractor is a matter for a jury. Plaintiff's position, however, is belied by his original complaint, the Deal Memo, and his own affidavit in opposition. His original complaint asserts that he was an employee of defendants (NYSCEF doc. no. 4 at ¶ 15 ["all defendants shared control of plaintiff as employers, either directly or indirectly]); the Deal Memo refers to plaintiff as an employee, describes his services to be rendered "exclusively" for defendants, and expressly provides that workers' compensation benefits were his "sole remedy" for "work-related injury" (NYSCEF doc. no. 77 at ¶5); and his affidavit admits that he was treated as defendants' employee (NYSCEF doc. no. 90 at ¶¶ 14-15 [averring that he signed an "I-9" employment form and was listed as an employee of defendants' production company on its payroll form]).
More importantly, even viewing the complaint in a light most favorable to plaintiff, defendants exerted substantial control and supervision over plaintiff's work, even if his specific lines were not dictated to him. For example, defendants hired plaintiff to be in this one production as a butler (NYSCEF doc. no. 46 at ¶ 56) and flew him to Massachusetts, where filming was to take place (id. at 62). During filming, producers asked him "to give the Housewives an update on their itinerary" (id. at 64), "to help Glanville get oriented in the [*11]Kitchen" (id. at 65), and "to get the women dancing," which "he obeyed" (id. at 72). Even acknowledging that his lines were unscripted, from plaintiff's allegations, it appears that defendants directly controlled when plaintiff would be filmed for the show and under what circumstances he appeared in it. (See Fleming v Shaheen Bros, 71 Mass. App. Ct. 223, 227-228 [App. Ct. 2008] [whether an employee relationship exists requires an analysis of factors like the method of payment for work—"important" but not controlling—and if one has a right to control the individual's work performance].)
Under Massachusetts workers' compensation statutory scheme,[FN12]
General Law Chapter 152, Section 24, entitled "waiver of right of action for injuries," states, "an employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer . . . written notice that he claimed such right." (G.L. c 152, s 24; Foley v Polaroid Corp. 381 Mass 545, 548 [Mass. Sup. Jud. Dist. 1980].) Compensation under the act is the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongness of the employer's conduct or the foreseeability of harm. (Estate of Moulton v Puopolo, 467 Mass 478, 484-485 [Mass. Sup. Jud. Ct. 2014].) "So long as the injuries were sustained while the employe was acting in the course of her employment . . . actions for negligence, recklessness, gross negligence, and willful and wanton misconduct by an employer are precluded by the exclusive remedy provision." (Id.) Here, plaintiff does not claim to have given defendants written notice of his intent to assert his rights outside of workers' compensation. As such, defendants have established that the Massachusetts' workers' compensation scheme provides his exclusive remedy.
As to negligent infliction of emotional distress, this claim, under Massachusetts law, requires plaintiff to demonstrate (1) the defendants' negligence, (2) emotional distress, (3) causation, (4) physical harm manifested by objective symptomology, and (5) a reasonable person would have suffered emotional distress under similar circumstances.[FN13]
(Lanier v President and Fellows of Harvard College, 490 Mass 37, 44 [Sup. Ct. of Mass. 2022], citing Payton v Abbott [*12]Labs, 386 Mass 540, 557 [1982].) In perusing plaintiff's amended complaint and affidavit, it is clear that, as defendants argue, the fourth and fifth prong of the analysis are inadequately pled. Both documents state that plaintiff was "embarrassed, confused, and shocked" by the unwanted harassment and touching and that these incidents caused employment losses and marital problems. (NYSCEF doc. no. 46 at ¶¶84, 86, 124-125 [citing employment-related losses, damage to professional reputation, "anxiety, worry, embarrassment, humiliation, and mental anguish"]; NYSCEF doc. no. 90 at ¶¶42-49, M.V. affidavit [same].) However, allegations of humiliation and dismay fail to establish a right to relief "above the speculative level" as is necessary to demonstrate physical harm. (Lanier, 490 Mass at 44 citing Guitierrez v Massachusetts Bay Transp. Auth., 437 Mass 396, 412 [2002] [noting physical harm is interpreted to encompass a broad array of symptoms, including mental conditions, "provided that they go beyond 'mere upset, dismay, humiliation, grief and anger'"].) Simply put, plaintiff's allegations of embarrassment, confusion, and marital problems, without more, fails to establish this claim, and thus, dismissal is appropriate under CPLR 3211 (g) as he cannot demonstrate a substantial basis in law.[FN14]
In light of Civil Rights Law § 70-a (1)(3), attorneys' fees are mandatory where "an action involving public petition and participation was commenced or continued without a substantial basis in fact and law." Thus, attorneys' fees are warranted here to the extent that there is not a substantial basis in law for plaintiff's negligence and negligent infliction of emotional distress causes of action.[FN15]

Since defendants are entitled to dismissal of each of plaintiff's causes of action, the Court need not address whether dismissal would be warranted under CPLR 3013.
Accordingly, for the foregoing reasons, it is hereby,
ORDERED that defendants' motion to dismiss the amended complaint pursuant to CPLR 3211 (a)(2), (a)(5), (a)(7) is granted in its entirety, and the complaint is dismissed; and it is further
ORDERED that defendants' application for an award of costs and attorneys' fees under CPLR 3211 (g) is granted; and it is further
ORDERED and ADJUDGED that defendants are entitled to an award of costs and reasonable attorneys' fees; and it is further
ORDERED that the matter is hereby referred to the Special Referee Clerk (Room 119M, 646-386-3028 or [email protected]) for placement at the earliest possible date upon which the calendar of the Special Referees Part (Part SRP), which, in accordance with the Rules of that [*13]Part (which are posted on the website of this court at 
www.nycourts.gov/supctmanh at the "References" link under "Courthouse Procedures"), shall assign this matter to an available JHO/Special Referee to conduct an inquest to hear and determine the reasonable attorneys' fees defendants are entitled to; and it is further,
ORDERED that within 10 days of entry, counsel for defendants shall serve a copy of this Decision and Order, with notice of entry, on all parties involved in this action via NYSCEF.
This constitutes the Decision and Order of the Court.
DATE 2/27/2026DAKOTA D. RAMSEUR, J.S.C.

Footnotes

Footnote 1:The Court has considered plaintiff's sur-reply in deciding the instant motion. Courts have broad discretion to accept or reject supplemental briefings as part of their inherent authority to regulate motion practice. (Pena-Vazquez v. Beharry, 82 AD3d 649, 919 NYS2d 336 [1st Dept. 2011] [The court did not abuse its discretion by granting permission to file as a sur- reply].) Defendants did not oppose plaintiff's request to interpose a sur-reply.

Footnote 2:While he alleges the employment agreement was signed by Shed Media, he asserts that each defendant is liable to him as "all of the defendants hired [him]" as one entity or they were acting as agents of each other. (NYSCEF doc. no. 46 at ¶26.)

Footnote 3:Glanville and Parks are not a named as defendants in this action.

Footnote 4:In paragraph seven, plaintiff cites to the arbitration agreement as purportedly creating a choice of law for common law and statutory claims. (NYSCEF doc. no. 89 at ¶7) In paragraph eight, he acknowledges defendants' interpretation of the arbitration agreement, but argues this interpretation ignores the severability clause. (Id. at ¶8.) And in paragraph 13, the same arguments are made, where the choice of law provision claimed is based on the arbitration agreement. (Id. at ¶13) Nowhere does plaintiff refute defendants' position that the Deal Memo does not apply to statutory claims. (NYSCEF doc. no. 80 at 14.)

Footnote 5:Plaintiff references the New York City's Gender-Motivated Violence Protection Law (NYC Administrative Code §10-1101), whose statute of limitations period is seven years. However, plaintiff's cause of action for assault and battery is based in common-law and the common-law statute of limitations is, as described, one-year. Further, plaintiff does not attempt to argue that the ripping of plaintiff's shirt or groping his buttocks is a "crime of violence motivated by gender."

Footnote 6:Plaintiff's intentional and reckless infliction of emotional distress claims are also subject to dismissal under CPLR 3211 (a)(7) as plaintiff, in alleging two instances of groping, has not pled the degree of culpability required for such causes of action. (See Chanko v American Broadcasting Cos. Inc., 27 NY3d 46, 56 [2016] [to plead the "outrageous" element, the level of conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."].)

Footnote 7:The Court notes that, while plaintiff refers to these instances in terms of sexual harassment and/or inappropriate conduct, the complaint does not allege that the other housewives viewed the conduct in such terms. The complaint is silent as to whether any defendant received a complaint concerning any one of these acts

Footnote 8:The Court cites California caselaw based on the precedent set by Aristocrat Plastic Surgery. As discussed above, the Court is not required to use California caselaw.

Footnote 9:In TRB Acquisitions LLC v Yedid, the First Department held that, under § 76-a(2), "the allegations of blackmail and extortion do not constitute 'lawful conduct'," and, thus, the plaintiff's action was not an anti-SLAPP suit. (239 AD3d 578, 580 [1st Dept 2025].) As such, it appears that the nature of the allegations, in some instances, may alone warrant a finding that §76-a(2) does not apply. To the extent this is true, however, it is clear that decisions made in the casting of a television program, and the negligence that might have taken place therein, are more similar to allegations of defamation (which are also unprotected First Amendment communications) than allegations of blackmail and extortion.

Footnote 10:Plaintiff does not dispute that the Real Housewives constitutes a matter of public interest.

Footnote 11:Plaintiff does not assert the negligence cause of action as one for negligent hiring or supervision.

Footnote 12:Since New York is the forum state, New York's choice-of-law rules apply. In determining whether New York or Massachusetts substantive law applies, then, New York uses an interest analysis and will apply the law of the jurisdiction having the greatest interest in resolving the dispute. Where the two parties are both non-domiciliaries, the law to be applied is where the situs of the injury is located. (Locke v Aston, 31 AD3d 33, 38 [1st Dept 2006]; DaSilva v C&E Ventures, Inc., 83 AD3d 551, 553 [1st Dept 2011.) Here, that is Massachusetts. For that reason, whether plaintiff has demonstrated a substantial basis for his negligent infliction of emotional distress must be analyzed by looking to Massachusetts law for that claim. Even so, the Court's ultimate determination that plaintiff has not adequately pled a negligent infliction of emotional distress claim does not hinge upon whether New York or Massachusetts law applies as, under New York law, plaintiff's claim—in merely allege embarrassment and shock—does not possess "some guarantee of genuineness. (See Brown v New York Design Ctr., Inc., 215 AD3d 1,9 [1st Dept 2023].) 

Footnote 13:Like the plaintiff's negligence claim, any recovery based on defendants' negligent infliction of emotional distress would lie in Massachusetts based on its workers' compensation scheme.

Footnote 14:For this claim, since the analysis under CPLR 3211 (g)(1) would be the same if CPLR 3211 (a)(7) were applied, dismissal would be required as plaintiff fails to state a claim for negligent infliction of emotional distress.

Footnote 15:In determining the appropriate attorneys' fees, the Court is mindful that defendants did not seek dismissal of plaintiff's California substantive claims under CPLR 3211 (g)(1), nor, for that matter, any of plaintiff's substantive claims for assault and battery. The Court is also aware that, for the majority of plaintiff's claims, dismissal has been granted under New York's statute of limitations and, thus, has not addressed whether plaintiff would otherwise have a substantial basis in law. Therefore, attorneys' fees should be limited to costs and fees specifically incurred in moving for dismissal pursuant to CPLR 3211 (g)(1).